# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

TAMI N. L.[1],

        Plaintiff,

           v.                  CASE NO. 3:21-CV-121-MGG

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

## OPINION AND ORDER

Plaintiff Tami N. L. ("Ms. L") seeks judicial review of the Social Security

Commissioner's decision denying her applications for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act (the "Act"). This Court may enter a ruling in this matter based on the

parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 12].

For the reasons discussed below, the Court **REMANDS** the decision of the

Commissioner of the Social Security Administration ("SSA").

## I.    OVERVIEW OF THE CASE

Ms. L filed applications for DIB and SSI on December 28, 2018. Both applications

alleged a disability onset date of December 26, 2018. Ms. L's claims were denied initially

on April 16, 2019, and upon reconsideration on October 31, 2019. Following a video

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

hearing on August 17, 2020,[2] an Administrative Law Judge ("ALJ") issued a decision on February 10, 2020, which affirmed SSA's denial of benefits. The ALJ's decision became the final decision of the SSA Commissioner when the SSA Appeals Council denied Ms. L's request for review on December 16, 2020. *See* *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. L sought judicial review on February 19, 2021. Ms. L filed her opening brief on November 15, 2021, and the Commissioner filed her Memorandum in Support of Decision on January 25, 2022. This matter became ripe on February 8, 2022, when Ms. L filed her reply.

## II.   APPLICABLE STANDARDS

### A.   Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity ["SGA"] by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R. § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI under the Act includes determinations as to: (1) whether the claimant is

---

[2] A request for hearing was filed on January 2, 2020; however, due to the extraordinary circumstances posed by the Coronavirus Pandemic, a telephonic hearing was not conducted until August 17, 2020.

engaged in SGA; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her residual functional capacity; and, if not, (5) whether the claimant is capable of performing other work. 20 C.F.R. §§ 404.1520; 416.920[3]. The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

### B.    Standard of Review

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2007).

The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence is "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Accordingly, at a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ is not required to address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "The ALJ must confront the evidence that does not support his conclusion and support why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). As such, an ALJ's decision will lack sufficient evidentiary support and require remand if the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v.*

*Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014).

### III.   ANALYSIS

#### A.   The ALJ's Decision on Ms. L's Applications

Ms. L's video hearing before an ALJ on her applications for DIB and SSI took place on August 17, 2020. On September 9, 2020, ALJ Marc Jones issued his written decision finding that Ms. L was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. L had not engaged in substantial gainful activity from her alleged onset date of December 26, 2018, through the date of the ALJ's decision [DE 14 at 21].

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. Here, the ALJ found that Ms. L suffers from the following severe impairments: asthma; fibromyalgia; degenerative disc disease of the lumbar spine; migraine headaches; obesity; generalized anxiety disorder (GAD) and major depressive disorder [*Id.* at 21-22]. Conversely, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.,* 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985

WL 56856 (Jan. 1, 1985). Here, the ALJ found that that Ms. L had the following non-severe medically determinable impairments: hyperlipidemia; hypothyroidism; hypertension; mild osteoarthritis of the right hip; hyperglycemia; edema; and tremors [*Id.* at 22].

At Step Three, the ALJ found that none of Ms. L's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In making this finding, the ALJ considered listings 1.03, 1.04, and 12.06. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. L can perform her past relevant work based upon her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite his limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ found that Ms. L had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) with the following additional limitations:

> except the claimant can occasionally climb ramps and stairs, can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can occasionally work in dust, odors, fumes, and pulmonary irritants. The claimant can never climb ladders, ropes, or scaffolds; and never work at

unprotected heights. The claimant can never work in bright sunshine or in bright, flickering lights, such as would be experienced in welding or cutting metals. The claimant is limited to a wok (sic) environment that has no more than a moderate noise level. The claimant is limited to a simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas; and few changes in a routine work setting. The claimant can occasionally interact with the public; and frequently interact with coworkers and supervisors. The clamant needs to be able to alternate between sitting and standing for 1-2 minutes at a time while remaining on task.

[*Id*. at 23]. Based on this RFC, at Step Four, the ALJ found that Ms. L was unable to perform her past relevant work as a dental assistant (skilled/light – DOT # 079.361-018) [*Id*. at 29]. Accordingly, the ALJ moved on to the last step in the five-step sequential analysis to determine whether Ms. L could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). ALJs typically enlist a vocational expert ("VE") to testify regarding which occupations, if any, a claimant can perform. *See* S.S.R. 83-12. VEs use information from the Dictionary of Occupational Titles ("DOT") to inform their assessments of a claimant's ability to perform certain types of work. S.S.R. 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Here, the VE, using the DOT, identified the following three representative jobs that Ms. L could still perform with her RFC—office helper, mail clerk, and information clerk, which, respectively, have 13,000 jobs nationally, 13,000 jobs nationally, and 2,000 jobs nationally [*Id*. at 30]. Based on this determination, there would be a total of 28,000 jobs in the national economy that Ms. L could perform.

Finding that Ms. L could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. L was not under a disability as defined in the Act. [DE 18 at 37; AR 31].

**B.     Discussion**

Ms. L raises two major claims in her opening brief. First, as a threshold issue, Ms. L contends that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinions of every examining and treating physician, but especially Ms. L's primary care physician, Michael Best, M.D. Next, Ms. L contends that the ALJ's Step Five determination is not supported by substantial evidence and is the product of legal error because the jobs identified by the ALJ are precluded by Ms. L's RFC. The Court will address each argument in turn.

**1.     Whether the RFC is Supported by Substantial Evidence**

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id*. The RFC is the ***most*** someone "can do despite their mental and physical limitations." 20 CFR § 404.1545(a)(1) and § 416.945(a)(1); SSR 96-8p(5) (emphasis added). The RFC is crafted based on "all the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' – i.e., opinions about what the individual can still do despite his or

8

her impairment(s) – submitted by an individual's treating source or other acceptable medical sources. SSR 96-8p.

When crafting a claimant's RFC, an ALJ must follow a two-step sequential process to determine whether a claimant's symptoms can be accepted as consistent with objective medical evidence and other evidence. First, the ALJ must determine whether there are underlying medically determinable mental or physical impairments that could reasonably be expected to produce the claimant's pain or symptoms. Second, if there are underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. *See* 20 C.F.R. § 416.929(a). The ALJ evaluates the intensity, persistence, and limiting effects of symptoms by considering subjective statements regarding symptoms and pain, as well as any description medical sources and other nonmedical sources provide about how these symptoms affect a claimant's ability to work. *See* 20 C.F.R. § 404.1529(a). Relevant factors include:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms

*See id.* § 404.1529(c)(3). This analysis must focus on "the extent to which the symptoms reduce the individual's capacity to perform work-related activities." *Wade v. Berryhill,* No. 2:17-CV-278, 2018 WL 4793133, at *10 (N.D. Ind. Oct. 4, 2018) (citing SSR 16-3p). Moreover, the ALJ must also consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence . . . " 20 C.F.R. § 404.1529(c)(4). Accordingly, a claimant's alleged symptoms are determined to diminish their capacity to work "to extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(c)(4).

Additionally, for claims filed after March 27, 2017, such as Ms. L's claim, the rules dictating how an ALJ is to weigh medical opinion evidence are set out in 20 C.F.R. § 404.1520c. Rather than giving specific evidentiary weight to a medical opinion or prior administrative medical finding, the regulations require an ALJ to explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative finding in [a] case record." 20 C.F.R. § 404.1520c(b). To determine persuasiveness, the ALJ must evaluate the medical opinion using several factors: supportability; consistency; specialization; and relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (internal citations omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.*

The ALJ must "explain how [he] considered the supportability and consistency factors." *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022) (citing *Tammy M. v. Saul*, WL 2451907 (N.D. Ind. June 16, 2021). However, the ALJ is not required to explain how he considered the other factors if they are not relevant to the decision. *Id.*; 20 C.F.R. § 404.1520c(b)(2).

Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate his reasoning for how he assessed a medical opinion, [but] he must still consider the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted). So long as the ALJ

gives specific reasons supported by the record, the Court will not overturn this determination unless it is "patently wrong." *See Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

As the first specification of error, Ms. L contends that the ALJ failed to properly evaluate the opinions of every examining and treating physician. Specifically, Ms. L claims that the ALJ failed to properly consider the opinion of her primary care physician, Michael Best, M.D.

At this point, it is important to note the role of the ALJ in considering medical opinion evidence. It is not the role of the ALJ to make his own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). While it is the responsibility of the ALJ to make findings "about what the evidence shows," 20 C.F.R. § 404.1520b, "playing doctor" is "a clear no-no." *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). An ALJ plays doctor where he "substitute[s] his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227 F.3d at 870.

### a.   Dr. Best's Records and Diagnoses

The Court will first consider the claim regarding Dr. Best. Clearly, Dr. Best is Ms. L's primary care physician and has treated Ms. L for longer than any other medical provider who provided evidence or testimony in this matter.

Ms. L attended a consultative examination with Dr. Best on May 8, 2022 [DE 14 at 743-760]. As part of the consultative examination, Dr. Best conducted a physical

examination and provided a mental assessment [Id. at 753-754] and a fibromyalgia

assessment [Id. at 755-758].

Dr. Best's physical examination covered numerous areas. [Id. at 759]. The Court

recounts certain relevant portions of the record here:

> [Ms. L] was seen for management of multiple problems. Her weight is up
> 14 pounds since 122 and 30 pounds since 3/5. She has marked bilateral
> pedal edema and swelling of both hands. She has increasing shortness of
> breath without chest pain. She has been using her asthmatic nebulizer
> solution/rescue inhaler multiple times daily for minimal improvement.
> She is currently using Advair 250/50 again for minimal improvement…
> Her blood pressure is 160/100 which is significantly elevated for her.

[Id.]. Dr. Best's fibromyalgia assessment noted that Ms. L would need to elevate her legs

to 90 degrees for up to 30 percent of the day due to edema [Id. at 756]. Ms. L's

symptoms would cause her to miss work more than 4 days per month [Id. at 757]. Ms. L

could sit for 20 minutes and stand for 10 minutes without walking around [Id.]. She will

need to take 20-minute breaks every 20 minutes, and she will need time to sit quietly

[Id.]. Ms. L will experience good days and bad days [Id.]. She is unable to tolerate high

or moderate stress, and a poor ability to tolerate low stress work or work in general

[Id.]. Dr. Best noted that Ms. L's impairments identified in this assessment were

consistent with signs, clinical findings, and lab or test results [Id. at 758].

Dr. Best also completed a mental health assessment [Id. at 753-754]. He found

that Ms. L was not able to "[f]ollow work rules, relate to co-workers, deal with the

public, use judgment, interact with supervisor/s, deal with work related stress, function

independently, and maintain attention/concentration" [Id. at 753]. He also found that

she was not able to "understand, remember, and carry out job instructions" [Id.]. He

opined that these problems were caused by her combination of depression, anxiety, migraine headaches, and prescription (Rx) treatment that markedly impact her memory [Id.].

### b.   Other Medical Opinion Evidence

Dr. Gupta conducted a consultative examination of Ms. L on April 12, 2019. [Id. at 453-466]. Based on his examination, Dr. Gupta found that Ms. L has difficulty doing work-related activities such as siting, standing, walking lifting, carrying and handling objects due to back pain and hand tremors [Id. at 466]. Consistent with his opinion, Dr. Gupta observed that Ms. L had difficulty stooping and squatting during his examination of her [Id. at 465]. Dr. Gupta found that Ms. L had normal grip strength bilaterally, and good fine finger manipulation with the ability to button, zip, and pick up coins [Id.]. Yet, Dr. Gupta also observed that Ms. L had slight tremors in both hands [Id.].

At the request of the State agency, Dr. Samuelson conducted a consultive psychological examination on October 28, 2019 [Id. at 723-727]. Dr. Samuelson found that Ms. L was in average range for auditory memory, visual memory, and delayed memory; she was in the low range for visual working memory and intermediate memory [Id. at 726]. Dr. Samuelson opined that Ms. L's memory, concentration, and persistence would interfere with her ability to hold employment [Id. at 727]. He attributed that opinion to her medical conditions, but also found that her cognitive issues would also contribute to her non-employability [Id.].

### c.      The Claimant's Testimony

At the administrative hearing on August 17, 2020, Ms. L testified that she could no longer perform her former job as a dental assistant [Id. at 47]. Her former job required her to be on her feet ninety percent of the day and to use her hands with fine instruments [Id.].

Ms. L also testified that she is unable to work now because of the symptoms associated with fibromyalgia [Id. at 48]. These fibromyalgiac symptoms include back spasms, leg numbness, uncontrollable arm and leg spasms, hand spasms and cramping that regularly impedes fine fingering and writing, inability to stand for more than 10 minutes, and limited mobility [Id.]. Ms. L explained that she experiences back spasms all day long and any time she stood for more than 10 minutes [Id.]. She has numbness in her legs all day long [Id. at 49]. She also experiences hand shaking and hand cramping throughout the day [Id.]. She cannot stand or sit for any extended period and must move after sitting for 20 or 30 minutes [Id.]. At night, she must move every 15 minutes, or her extremities will become numb [Id.]. She also has recurring leg spasms that cause her legs to jerk uncontrollably like "a marionette." [Id.]. Likewise, she has hand spasms and cramping that prevent her working and enjoying arts and crafts [Id. at 50]. Her hands shake uncontrollably to the point that she cannot thread a needle or tie her shoes [Id. at 51]. On bad days, she must use a fork to eat [Id.].

Occasionally, she can lift a grocery bag of about 10 pounds in weight, but then she needs to rest immediately thereafter [Id. at 50]. She has fallen a few times when carrying groceries and in the shower [Id. at 50-51]. On a bad day, she also experiences

confusion, memory loss, and anomic aphasia [Id. at 51]. She has more bad days than

good days in a given week [Id. at 52]. Even on "good days," her hands still shake, and

she cannot stand for any length of time [Id. at 53]. Due to her confusion, concentration,

and memory issues, it now takes her a week to read a book that she used to be able to

digest in a day [Id.].

Ms. L also experiences recurrent fatigue [Id. at 54]. Most days she needs an

afternoon nap, especially if she had a doctor visit [Id.]. She continues to experience

swelling in her hands and feet [Id.]. When her hands swell, she has even less dexterity

and grip strength [Id.]. Her hands swell about twice a week and her feet swell about

three times per week [Id. at 54-55]. When her feet swell, it usually lasts the entire day.

Ms. L also testified that she suffered from recurring migraine headaches [Id. at

57]. She had two or three migraine headaches each week. [Id.]. When she has a

migraine, she takes Imitrex [Id.] By taking Imitrex, staying in dark room, and sleeping,

Ms. L can achieve pain relief in approximately 45 to 60 minutes [Id.]. The migraines also

create light sensitivity and nasal congestion [Id.]. Ms. L also suffers from asthma [Id. at

58]. She uses a daily steroid inhaler and a rescue inhaler to treat symptoms of asthma

[Id.]. Strong odors and scents can trigger her asthma [Id.]. She also has year-round

allergies to ragweed, mold, cut grass and tree pollen [Id.]. On high pollen days, she

needs to take Benadryl or a prescription medication to relieve the symptoms [Id.].

Ms. L also discussed her ongoing anxiety [Id. at 59]. In comparison to the past,

she now experiences high anxiety around people [Id.]. When she is around people, she

begins to feel claustrophobic – like she "can't breathe" [Id.]. She is no longer

comfortable in large crowds or crowded stores [Id.]. To avoid crowds of ten people or more, she does not attend festivals and, when she goes to grocery store, it is at 2:00 A.M. [Id.].

### d.   The ALJ's Consideration of the Medical Testimony and Opinions

In his decision, the ALJ referenced findings from Dr. Best's physical examination, Dr. Gupta's medical opinion, and Dr. Samuelson's psychological evaluation as part of the discussion of Ms. L's severe and non-severe impairments at Step Two and as part of the ALJ's determination of Ms. L's RFC at Step Four. Each of these experts indicated that Ms. L was unable to work due to physical and/or mental limitations. The ALJ found none of these opinions to be persuasive [Id. 28-29].

Rather than accepting the opinions of Drs. Gupta and Samuelson regarding Ms. L's impairments, along with a consistent opinion of Dr. Best – the claimant's primary care physician who had treated and interacted with her for the longest period – the ALJ focused on the opinions of physicians who observed the claimant on single occasions – Dr. John Heroldt and Dr. Robert Walsh.

Dr. Heroldt was a consultative examiner who saw Ms. L on March 26, 2019. The ALJ relied on Dr. Heroldt's statement that Ms. L had average work tempo [Id. at 26]. He also drew a negative inference from Dr. Heroldt's report that Ms. L "could handle changes in routine okay" because Dr. Heroldt did not make any findings to the contrary [Id. at 23]. However, Dr. Heroldt noted that Ms. L "tended to ramble and had to be redirected" [Id. at 26]. He also stated that Ms. L's memory was below average [Id.].

After treating with Dr. Samuelson, Ms. L was referred to Dr. Walsh for "memory issues" [Id. at 27]. At the single visit with Dr. Walsh on October 3, 2019, he found that Ms. L was "animated with pleasant mood and that she had no significant cognitive deficits" [Id.]. He observed that Ms. L "stayed on task and had fair concentration" [Id.]. He concluded that Ms. L had "only mild depression and GAD (Generalized Anxiety Disorder)" [Id.].

### e.     Discussion

As discussed below, the Court agrees with Ms. L that the ALJ failed to adequately discuss the consistency and supportability factors as to the opinions of Drs. Best, Gupta, and Samuelson such that remand is appropriate. As stated, an ALJ must "explain how [he] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(c)(2).  While the ALJ need not discuss every detail in the record, he may not ignore an entire line of evidence that is favorable to the claimant. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003).

Based on his consultive examination, Dr. Gupta provided a medical opinion that Ms. L would have "difficulty doing work related activities such as sitting, standing, walking, lifting, carrying and handling objects due to back pain and hand tremors" [DE 14 at 466]. However, the ALJ found that Dr. Gupta's opinion was not persuasive because "it is *not consistent with or supported by the record*." [Id. at 28] (emphasis added).

Likewise, Dr. Samuelson, the consultative examiner, determined that Ms. L's memory, concentration, and persistence would interfere with her ability to maintain employment [Id. at 29]. Again, the ALJ found that Dr. Samuelson was opinion was not

18

persuasive because "*it is not consistent with or supported by the record*" [Id.] (emphasis added).

Furthermore, Dr. Best, Ms. L's primary care physician, provided an opinion that Ms. L could ***not*** carry out job instructions because the "combination of depression/ anxiety/migraine headaches and Rx treatment are markedly impacting memory" [Id. at 753]. Dr. Best also found that Ms. L was incapable of sustaining work on a continuing basis because of "poor concentration, pain from fibromyalgia and meds combined with mod[erate]/severe fatigue limit ability to stand or sit [;] she has bilateral tremor of upper limbs that affects fine manipulation" [Id. at 754]. As such, Dr. Best concluded she would be absent from work four or more times each month [Id.]. In his decision, the ALJ summarized this portion of Dr. Best's report as "the claimant has poor concentration and would miss 4 days or more a month," and then found this opinion to be unpersuasive because "*it is not consistent with or supported by the record*" [Id. at 29] (emphasis added).

As an initial matter, general statements that a medical opinion is not consistent with the record are insufficient under the regulations. *See, e.g., Willis*, 2022 WL 2384031, at *4 (observing that an ALJ decision finding that medical opinions were either "not consistent with the available medial evidence summarized above" or "somewhat consistent with the available medical evidence summarized above" without describing specific evidence considered required remand); *see also Michael L. v. Saul*, No. 2:20CV238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (stating "the ALJ cannot merely summarize the evidence, as a whole, and then conclude that [certain medical]

opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [certain medical] opinions and why.")

Here, the ALJ provided a generalized review of Ms. L's medical record and discussed evidence inconsistent with the opinions of Drs. Best, Gupta, and Samuelson. Yet, the ALJ's statement that these medical expert opinions are unpersuasive because they are inconsistent and not supported by the record does not stand close analysis.

Based on the record developed by the ALJ, the Court cannot find that the ALJ evaluated Dr. Best's opinion fairly and completely. First, the ALJ discussed only certain portions of Dr. Best's extensive medical examination findings and failed to address other findings. For example, in assessing and discounting Ms. L's complaint of numbness in her legs [DE 14 at 27], the ALJ failed to directly acknowledge that Dr. Best's records contain numerous references to numbness, weakness, and radicular pain [See, e.g., Id. at 473]. The ALJ also failed to discuss or consider how Ms. L's fibromyalgia may have complicated and/or exacerbated her sensations of pain and numbness [Id.; see, also, FIBROMYALGIA, https://www.niams.nih.gov/health-topics/fibromyalgia ("other symptoms may include... [n]umbness or tingling in the arms and legs"].

Both Dr. Samuelson, the consultative psychological examiner, and Dr. Gupta, the consultative medical examiner, examined Ms. L and provided a medical source statement at the request of the Indiana Disability Determination Bureau. A medical source statement is a "medical opinion[] submitted by accepted medical sources,

20

including . . . consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis." *Social Security Ruling (SSR) 96-5p. Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 61 FR 34471-01. Likewise, an RFC is ordinarily "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. "A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996).

Here, Dr. Samuelson opined that Ms. L's issues with memory, concentration, and persistence would interfere with her employability; however, the ALJ found that opinion to be unpersuasive because it was "not consistent with or supported by the record" [DE 14 at 29]. Likewise, Dr. Gupta opined that Ms. L would have difficulty performing work-related activities such as siting, standing, walking lifting, carrying and handling objects due to back pain and hand tremors, but the ALJ rejected that opinion as unpersuasive because it was "not consistent with or supported by the record" [Id. at 28]. However, the ALJ did not explain what other evidence undermined the opinions of Drs. Samuelson and Gupta.

Moreover, the ALJ does not account for the subjective nature of fibromyalgia in explaining the supportability and consistency of the opinions from Drs. Best, Gupta and Samuelson. As the Seventh Circuit has noted, the "cause or causes [of fibromyalgia] are unknown, there is no cure, and, of greatest importance to disability law, its symptoms

21

are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). In *Sarchet*, the court also chastised the ALJ for "depreciat[ing] the gravity of [the claimant's] fibromyalgia because of the lack of any evidence of objectively discernible symptoms…" Id. At 307. While it is possible here that the ALJ assessed Ms. L's subjective fibromyalgia symptoms in considering the persuasiveness of the opinions of Drs. Best, Gupta, and Samuelson, the ALJ's decision does not explain how he connected Ms. L's subjective symptoms to his supportability or consistency analyses leaving the Court to speculate as to his rationale for discounting these medical opinions.

While the Court will not reweigh the evidence here, Ms. L has presented evidence in the record that raises questions about the ALJ's finding that the opinions of Drs. Best, Gupta, and Samuelson are unpersuasive. *See Young*, 362 F.3d at 1001. Yet, the opinions of Drs. Best, Gupta, and Samuelson are consistent with one another and are consistent with Ms. L's testimony. To reject this consistent testimony, the ALJ must make specific findings demonstrating the inconsistency, if any, and detailing the reasons he finds this expert testimony to be unreliable and unpersuasive. Without a more comprehensive explanation and analysis from the ALJ, there are gaps in the ALJ's logic such that the Court cannot trace the path of the ALJ's reasoning concluding that the opinions of Drs. Best, Gupta, and Samuelson are inconsistent with the evidence. A recitation of the medical records without adequate review and analysis is insufficient. *Scott*, 297 F.3d at 595. Without more, the Court cannot find that the ALJ built a logical bridge to explain why the evidence was not consistent with Dr. Gupta's medical opinion. *Craft*, 539 F.3d at 673; *Taylor*, 2023 WL 334602, at *3.

With the evidence in the record favorable to Ms. L, the ALJ has not supported his conclusion that the opinions of Drs. Best, Gupta, and Samuelson are unpersuasive with substantial evidence. The ALJ's analysis of these medical opinions does not adequately trace his reasoning leaving Ms. L and this Court unable to do so as well. Without more, this Court is left to speculate as to reasoning behind the ALJ's decision thereby making it impossible to determine if the ALJ was correct in determining that Ms. L was disabled and, if so, in creating an RFC consistent with her medical conditions. As such, the Court cannot find that the ALJ adequately "consider[ed]" the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." *Taylor*, 2023 WL 334601, at *3 (internal citation omitted). Moreover, the Court cannot discern whether the ALJ would reach the same result on remand. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Therefore, the ALJ's error in assessing Ms. M's RFC cannot be deemed harmless, which necessitates remand.

### 2.     Whether the ALJ erred at Step Five

As noted above, the Commissioner has the burden at Step Five to prove that other work exists in significant number in the national economy that the claimant can perform taking into account her RFC and vocational factors. 20 C.F.R. § 404.1560(c)(2); *Liskovitz*, 559 F.3d at 742-43. Here, Ms. L contends that the ALJ's decision at Step Five is not supported by substantial evidence because the jobs identified—Office Helper, Mail Clerk, and Information Clerk —are disallowed by Plaintiff's RFC for a modified range of light work. As such, Ms. L asserts, the ALJ committed legal error in arriving at his Step Five determination.

At the hearing, the ALJ presented the VE with a hypothetical individual with limitations consistent with Ms. L's medical and vocational history [DE 14 at 63-64]. Among other limitations, the hypothetical assumed that the individual is:

> The claimant's age, education and work experience. Further assume that this individual can perform the full range of light work, except that she can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, crouch and crawl, and occasionally work in dust, odors, fumes and pulmonary irritants. She can never climb ladders, ropes or scaffolds, can never work at unprotected heights. She can never work in bright sunshine or in bright flickering lights, such as would be experienced in welding or cutting metals, and she is limited to working environments that have no more than a moderate noise level. She is limited to simple, work-related decisions and simple routine tasks with no assembly-line work and strictly enforced daily production quotas, and few changes in the routine work setting. She can occasionally interact with the general public and frequently interact with coworkers and supervisors.

[Id.]. The VE opined that this individual could perform the jobs of office helper (DOT # 239.567-010, light, SVP 2), mail clerk (DOT # 209.687-026, light, SVP 2) and information clerk (DOT # 237.367-018, light, SVP 2) [Id. at 64]. The VE testified that her testimony was consistent with job requirements outlined in the DOT, but that she also used her education and expertise to identify appropriate jobs because the DOT does not address certain limitations, such social interaction, production rate, sitting and standing, exposure to sunshine, flickering lights, heights, and pulmonary irritants [Id. at 66]. As far as the VE's testimony goes, the ALJ reasonably relied on the VE's expertise that Ms. L could perform certain jobs in the national economy. *See, e.g., Sawyer v. Colvin*, No. 1:12-cv-264-JEM, 2013 WL 5320356, at *4 (N.D. Ind. Sept. 23, 2013).

As the Commissioner notes, the ALJ relied on the VE's testimony and made a general finding in his decision that Ms. L could perform a reduced range of light work [DE 14 at 30-31]. However, what the ALJ failed to do was to adequately analyze how Ms. L's established limitations impacted the number of jobs in the national economy that she was able to perform. The limitations outlined in the ALJ's hypothetical did not account for other significant limitations experienced my Ms. L. By failing to include these limitations in his hypothetical and/or by failing to account specifically for these limitations in his decision, the ALJ erred. An ALJ is required to determine if the VE's testimony conflicts with information provided in the DOT before concluding that testimony supports a nondisability determination *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Because the ALJ failed to develop an adequate record regarding the impact that Ms. L's medical conditions had on her ability to maintain employment, this Court cannot determine whether a significant number of jobs exist in the national economy for a hypothetical individual who has all of Ms. L's limitations and has Ms. L's additional limitations including fibromyalgia, memory loss/fog, fatigue, leg strength, and obesity. By failing to address these symptoms with the VE, the logical bridge created by the ALJ contains large gaps that prevents this Court to follow the ALJ's reasoning. As such, remain is required. *Roddy*, 705 F.3d at 636.

### 3. Other Error

The ALJ also erred by failing to properly consider Ms. L's diagnosis of obesity. "[A]n ALJ should consider the effects of obesity together with the underlying impairments, even if the individual does not claim obesity as an impairment." *Prochaska*

25

*v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). The impact of obesity on Ms. L's ability to work can be considered by the ALJ when discussing relevant limitations with the VE on remain. Hypotheticals posed to a VE "ordinarily must include all limitations supported by medical evidence in the record" to ensure that the vocational expert does not refer to jobs that a claimant cannot work. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). On remand, the ALJ will have the chance to present complete hypotheticals to the vocational expert based upon the limitations then defined.

Likewise, the ALJ will have the opportunity to fully discuss and reevaluate the rest of Ms. L's allegations on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss them when errors are already present in the ALJ's analysis and discussion of Mr. L's medical records.

**IV.    CONCLUSION**

For the reasons stated above, the ALJ failed to support his decision finding Ms. L is not disabled with substantial evidence. *See Kastner v. Astrue,* 697 F.3d 642, 646 (7th Cir. 2012); *Scott,* 297 F.3d at 595. Accordingly, the decision of the ALJ is **REVERSED** and the instant action **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 29th day of March 2023.

s/ Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge

26